### BOYD *et al. v.* HANSON.

#### (*Circuit Court, D. Minnesota.*   February 4, 1890.)

1. FACTORS AND BROKERS—UNAUTHORIZED ACTS—RATIFICATION.
    Where grain brokers, employed by a dealer to buy and sell wheat on future delivery, write the dealer that a contract which he has for May can be changed to June delivery, to which letter the dealer makes no reply, and the brokers so change the contract, sending a statement to the dealer showing such change to have been made, the receipt and retention of the statement by the dealer without objection amounts to a ratification of the brokers' act in making the change.

2. SAME—GAMBLING CONTRACTS—GRAIN FUTURES.
    If, in contracts for the sale of wheat, to be delivered in the future, the parties have no intention to make an actual sale and delivery, but intend to settle at the time fixed for delivery merely by paying the difference between the contract and the market price, the contract is a wager, and is illegal, and advances made under it cannot be recovered.

3. SAME—RIGHT OF BROKER TO RECOVER ADVANCES.
    In an action against a dealer by brokers employed by him to buy and sell wheat for future delivery, to recover advances made by them on his account, where the contracts on their face are for actual sale and delivery, the burden is on defendant, if he attacks their legality on the ground that there was no intention of actual delivery.

4. SAME.
    If such brokers, acting for the dealer, enter into *bona fide* contracts for actual sale and delivery, and afterwards, at his request, instead of delivery, settle the losses, and pay the difference between the contract and the market price, they are entitled to recover from the dealer the amounts so paid, though the dealer himself may have had no intention to deliver the wheat.

5. SAME.
    The contracts themselves are not conclusive evidence of the intention of the parties, but their intention may be gathered from all the circumstances attending the making of the contracts, and the conduct of the parties with reference to them.

At Law.   Action by James E. Boyd and Samuel Boyd against Theodore Hanson, to recover advances and commissions.

*Ralph Whelan, D. M. Kirton,* and *O'Brien & O'Brien,* for plaintiffs.
*Wm. S. Moore,* for defendant.

NELSON, J., (*charging jury.*)   This is an action in which the plaintiffs seek to recover for alleged advances on account of the defendant, made at his request, and also for agreed commissions for services rendered on his account.   Plaintiffs, during the years 1888 and 1889, when this alleged indebtedness accrued, were brokers and commission merchants, doing business in the city of Chicago, and connected with the Chamber of Commerce of that city, where they bought and sold for persons who

employed them. They had a branch office in the city of Minneapolis, and a manager in charge. The defendant is a merchant and wheat-dealer residing at Benson, in this state; and the alleged advances, it is claimed, were made on his orders, for the sale and purchase of wheat in Chicago, for future delivery, from the Minneapolis office. The time during which these transactions occurred commenced in August, 1888, and were concluded, and the whole transaction finally closed up, in June, 1889. The plaintiffs claim that the defendant applied to the Minneapolis office, to employ them to sell and purchase wheat for future delivery; that he inquired of the manager the commission to be charged, and was informed of the rate, and also told by the manager in charge that it was a good time to make some "scalps;" but what that term means has not been developed by the testimony. It is claimed on the part of the plaintiffs that he was informed of the rate of commission for their services; that the contracts made for him would be subject to the rules, usages, and regulations of the Chamber of Commerce of the city of Chicago, and that in all cases actual wheat must be purchased and sold, and the margins kept up, to protect them against loss. The defendant transacted business through the plaintiffs from August, 1888, until June, 1889, according to the plaintiffs' evidence, when all the contracts were closed. The defendant testifies that no particular agreement as to how the business was to be conducted was made at the time of his interview with the manager in Minneapolis, in August; but he admits that the plaintiffs made advances for him previously, and up to February 6, 1889, and testifies that the only transactions of his open and unsettled at that time were a contract of 40,000 bushels of wheat for May delivery, and one of 25,000 bushels for July delivery. The first of these, defendant claims, was transferred, without his order, from May to June wheat; and, before proceeding to speak about the chief controversy in the case, I will call your attention to this transaction. The testimony of the defendant is that he never gave any orders for, or consented to, such transfer, and that the plaintiffs, if they so made it, assumed the burden of the transaction. The evidence of the plaintiffs with regard to the authority to make the transfer on defendant's account is circumstantial. But evidence is introduced tending to show a ratification by the defendant of what had been done, not only by direct admission of the whole indebtedness, a part of which is made up of losses on the contract of transfer from May to June, but also by evidence that the defendant was informed of the fact of the transfer, and that a report and statement were made to him on the 29th day of April, when the change was made, and that no objection was made to the correctness of the statement of account so made and rendered.

Now, if you find from the evidence that the plaintiffs, about April 29, 1889, informed the defendant by letter that the 40,000 bushels of May wheat in question could be at that time changed to June wheat, and that the defendant made no answer thereto; and if you further believe from the evidence that said May wheat was changed over into June for and on account of the defendant, and that the plaintiffs rendered an account,

a report, and statement to defendant that said change had been made, and the defendant received such report and statement, and retained it, and made no objection to said change of said May wheat to June,—then such facts amounted to and were a ratification on the part of the defendant of the acts of the plaintiffs in making such change.

The chief controversy in this case is about the character of the transactions between the plaintiffs and the defendant, which is the basis of this suit. It is urged by the defendant that all these transactions were wagers, and that no wheat was ever in any instance intended to be received or delivered by him; that the plaintiffs so understood it, and that the evidence and the reports of sales and statements made to him show that fact; and that these transactions were in violation of the statutes of the state of Illinois, which were read to you by counsel for the defendant. The plaintiffs' theory is, and evidence has been introduced tending to sustain it, that they were employed by defendant, through the Minneapolis office, as brokers and commission merchants, to purchase or sell wheat for future delivery on his account, and that such sales and purchases were to be made on the Chicago Board of Trade, with the members thereof; that such contracts were to be governed by the rules and usages of such Chamber of Commerce; and that in every instance actual delivery of wheat was intended by the parties to the contracts made for the defendant's account; and that these contracts were closed and settled up by the plaintiffs in accordance with these terms, and at the defendant's request, and advances were made, and their own money paid out, for his benefit. The purchase and sale of wheat to be delivered at a future time, the day of the months for the delivery being optional, is a fair contract, if the intention of the contracting parties is to deliver the wheat, although the wheat is not in the possession of the seller at the time of the contract of sale, but if the contract does not contemplate a delivery of wheat, but both parties thereto intend a settlement of the contract at the market price, then the transaction is illegal, within the law of the state of Illinois. Such a contract is gambling, contrary to public policy, and demoralizing to legitimate trade. All optional contracts, however, are not illegal under this statute, which was read to you. If the option is to sell or purchase at a future time, then it is illegal, and a wager; but if the option consists merely of a delivery within a specified time, the contract is valid. And what was done by putting up margins amounts to nothing, unless the contract itself is illegal. The validity of an option contract depends upon the mutual intention of the parties thereto; and if a sale or purchase of actual wheat for future delivery is intended, it is valid. If the contract is lawful, the putting up of margins to cover losses which might accrue from fluctuations in prices in final settlement of the transaction, according to the rules and usages of the Board of Trade of the city of Chicago, is entirely proper and legitimate. These rules have been read to you by counsel for plaintiffs, and there is nothing in those rules, on their face, that indicates that they are in violation of the laws of Illinois, or contrary to public policy. At the same time, it is well known that, no matter

what may be the rules, and what may be the law, parties to contracts, or to other transactions, if they are so disposed, may be able to violate them, and, contrary to the spirit of the law, enter into a contract which may be in form valid, but within the statute. Courts, however, must recognize, from necessity, the methods of carrying on business at the present day, and apply well-settled principles of the common law to enforce contracts, unless they are forbidden by statute, or violate some rule of public policy. The daily mercantile business of the country—and by that I mean the sale and purchase of personal property—could not be successfully carried on, if merchants and dealers were unable to sell something which they did not have, but which they intended to get in the market, and buy, before the day of delivery. A trader has a right to sell, to deliver at some future time, that which he then has not, but which he expects to go into the market and buy; and the parties may agree mutually that there need not be a present delivery, but that such delivery may take place at some other time. Such future delivery contracts, however, must be in good faith. There must be an intention to make an actual sale and delivery of the article dealt in. If they are merely fictitious,—if the parties have no intention to make an actual sale and delivery,—but the intent is to settle the contract at its expiration merely by paying the difference between the contract and the market price, then it is a mere wager upon expected fluctuations in prices, and is illegal.

The issues here presented render it necessary for you to determine what was this contract. What was the character of this transaction entered into between the parties? If you should determine from the evidence that there was to be no delivery under the contracts which have been testified to, and that the memoranda offered in evidence in the shape of these "trading cards," as they have been called, and the contracts for sale and purchase of wheat, were fictitious, and merely colorable, and made and executed as a cover for speculation in margins; that, in case the price of wheat fell or rose in the market, merely the difference was to be paid; and that that was the intention of both parties, —then the contracts are in their nature wagers, and illegal. In that case the contract required no offer to perform, nor was an ability to perform contemplated, in order to entitle the party claiming the breach of the contract to the difference. The theory of the defendant is that these transactions between the plaintiffs and himself were wagers. He insists that the arrangement which was made, as far as his intention was concerned, with the plaintiffs, was merely betting upon the future price of wheat; and he claims that the testimony of the contracts themselves, and the reports which were rendered him, and the correspondence, show that such was the intention of the plaintiffs, and that both parties knew and understood that these transactions were mere wagers, and that no wheat was to be delivered or received. The theory of the plaintiffs is that hey were brokers and agents appointed by the defendant to transact business, in good faith, for the purchase and sale of wheat for future delivery, and that they did so; and that all these little memoranda of the

transactions at various times, upon the Chamber of Commerce, between these plaintiffs and other parties, members of that chamber, as evidenced by these papers offered in evidence, attached to the depositions, were contracts for the actual delivery of wheat, and were sales and purchases of wheat for future delivery.

If you believe that the plaintiffs were employed by the defendant as brokers, to buy and sell wheat, and the contracts and memoranda which have been offered in evidence were, upon their face, contracts for the sale and purchase of wheat for future delivery, and the plaintiffs conducted this business for defendant's account, and at his request advanced money on said contracts, which is the indebtedness sued for, then the burden of proof is upon the defendant to show, by a preponderance of evidence, to your satisfaction, that these contracts were wagers. But if you believe the theory of the defense, which is that it was a gambling operation, and that all this money, which is claimed to have been advanced for a legitimate purpose, was advanced for a speculation in margins, and a gambling transaction, which was known to both parties, then, of course, the courts will not aid the plaintiffs in the recovery of advances for money which they knew was furnished for gambling transactions; and in that case your verdict should be for the defendant. That is, if you should determine the arrangement or understanding between the parties to the contracts was a gambling transaction, as I have stated to you, and the money was advanced by plaintiffs to enable the defendant to engage in such illegal transactions, and the plaintiffs and defendant had in view a mere wagering contract upon the price of wheat; and the advances which the plaintiffs made were paid out on contracts which, between the plaintiffs and those with whom they dealt, were mere bets upon the market price of wheat in the future, no delivery having been made or contemplated,—then the plaintiffs cannot recover, and your verdict should be for the defendant. In such a case, plaintiffs knowingly furnished the means for an illegal transaction, and one prohibited by the statutes of Illinois, and the advances they made were in settlement of losses made under illegal contracts; and they cannot recover for such advances.

On the other hand, if you believe that the evidence shows that the plaintiffs, acting as the defendant's brokers in the sale and purchase of wheat, entered into *bona fide* contracts for the actual sale and delivery of wheat, with third parties, at his request, and subsequently settled losses, and paid the amounts due under the contracts, then they are entitled to a verdict, and to recover the same, for this money paid out at his request.

So, if you find from the evidence that the plaintiffs were brokers or commission merchants in the city of Chicago, and members of the Chamber of Commerce in that city, and that at various times from August, 1888, up to June, 1889, they received orders from the defendant to buy or sell wheat; and, further, if you find from the evidence that the plaintiffs, acting in good faith, and in the belief that the defendant was sending said orders in good faith, made actual purchases and sales for said defendant, at his request, as ordered, and in such transactions laid out and expended money for the defendant, for the purpose of such act-

ual delivery,—then the plaintiffs are entitled to recover the amount thus paid, laid out, and expended for the defendant, and their commission.

If you find that the plaintiffs were commission merchants of said city of Chicago, and members of the Board of Trade in that city, and they acted as the brokers of the defendant, and at defendant's request, and from time to time, during the period in evidence here, made, in good faith, the contracts read in evidence, on the orders of the defendant, and that said contracts intended the actual delivery of wheat therein mentioned, and, in settlement of the said contracts, plaintiffs paid, laid out, and expended money for defendant, they can recover in this action. And if you believe from the evidence that these plaintiffs, acting as the agents of the defendant, entered into these contracts evidenced by these memoranda, and they were contracts for the purchase and sale of wheat, then such contracts cannot be rendered illegal by the mere intention of the defendant alone not to deliver or receive the property. To make such contract, read in evidence, void as a wagering or gambling contract, each party to the contract must have designed and intended, at the time the contract was entered into, not to buy and receive the property, but to settle the mere differences between the contract price and the market price. And if you should find that the defendant intended to gamble in wheat, and at no time to deliver or receive the property, and pay for it, and if you also find that the plaintiffs were ignorant of such intention on the part of the defendant, and they received these orders of the defendant to buy and sell in good faith, and in doing so incurred obligations for said defendant by said contracts, and the contracts intended the actual delivery of wheat, and plaintiffs paid money upon these contracts, to adjust them for defendant, then they are entitled to recover a verdict in this action.

On the other hand, I would say to you that these memoranda which have been offered in evidence, and the entries on the plaintiffs' books of these contracts, are not conclusive evidence of their character. You are to determine what these contracts were. You are to determine that from the evidence in the case. You can look into the transactions themselves, as disclosed by the evidence, and determine, from the facts and circumstances attending their making, and the conduct of the parties thereto with reference to them, whether they are illegal, within the rule laid down, or whether they are *bona fide* contracts for the purchase and sale of wheat to be delivered at a future time. I might say to you here that, if you find from the evidence that any of these contracts had been offset under the rules and regulations as prescribed by the Board of Trade of Chicago,—offsets between persons and dealers connected with that board, through whom these plaintiffs operated,—that is not evidence of their illegality. The mode of settlement of *bona fide* contracts for the sale of actual wheat does not affect the validity of the contract, if the original intention was to purchase, receive, take, and deliver the actual wheat, at the time specified when the contracts were made.

I have been presented with a great many requests on the part of the plaintiffs, and one on the part of the defendant. (Counsel for plaintiffs

state that their requests have been given in substance by the court, and that they desire to withdraw the same.)

I have virtually given the request presented by the defendant, but I will give it in his language, accompanied by some statement which I will make with reference to it:

"If you should believe that it was the intention of both parties to this contract that no actual wheat was sold or delivered, or intended to be delivered at a future time; and if you should find from the evidence that it was not the intention of either party that a contract should be made by plaintiffs to buy and hold wheat for delivery to the defendant, but that it was the real intention and the understanding of the parties that a contract should be made which should be closed at a future date, not by the delivery of the wheat, and the payment of the purchase price, but by the payment of money to one party or the other, the parties to receive the same, and the amount to be paid, to be determined upon a basis of the difference between the agreed purchase price at the time the purchases were made and the actual market value of the wheat on the day when the contracts were closed,—then the jury are instructed that such contracts are illegal in law, and void, and you will find for the defendant."

I have virtually charged that, but I have put it in the form stated by the defendant.

On the question of amount, there is some $17,000 odd claimed to be due the plaintiffs, and some $600 for commission. The pleadings in the case show the amount claimed to be due. If the contracts are not wagering contracts, as far as the amount that is actually due is concerned, it would depend upon whether you determine that there was a ratification of an act which was done by the plaintiffs, claimed to have been done without any order from the defendant. I have stated to you the law which will govern you in regard to the settlement of that question. The defendant, giving his own testimony, testifies as to no order having been sent by him. The plaintiffs have introduced facts and circumstances tending to show that that order was given, and in addition to that, they have introduced the testimony of witnesses as to an admission on the part of the defendant that the account was correct, and also that the account rendered was put in his hands in the neighborhood of the 29th of April, or thereabouts, and a letter was written in which he was informed of the change; that no reply was made by him that an account was rendered of the transaction; that he retained the account, and had correspondence with the plaintiffs afterwards in regard to some other matters, without mentioning or raising any objection to it; and that he gave no reply to the information contained in that letter. If you find from the evidence all these facts, you are to say whether it did or did not amount to a ratification. If the facts are true, then there is a ratification. I think you understand it.